645 F.2d 473
 UNITED STATES of America, Plaintiff-Appellant,
v.
Lannon E. MILLER, Travis A. Miller, Bill G. Broadway and
Miller Builders& Developers, Inc., Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
Tydes William ALLEY, Jr., et al., Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
Glen D. GRAVES et al., Defendants-Appellees.
 Nos. 80-3353, 80-3358, 80-3457, and 80-3470.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit A
 May 20, 1981.
 Al J. Daniel, Jr., Alexander Younger, Mark H. Gallant, Anthony J. Steinmeyer, Michael F. Hertz, Dept. of Justice, Appellate Staff, Civil Div., for United States.
 Gordon E. Rountree, Shreveport, La., for Lannon E. Miller and Miller Builders.
 Peters, Ward, Miller & Bright, Hugh T. Ward, Shreveport, La., for Travis A. Miller.
 Sockrider & Bolin, James E. Bolin, Jr., Shreveport, La., for Bill G. Broadway.
 Smitherman, Smitherman, Lunn, Hussey & Chastain, John B. Hussey, Shreveport, La., Joe J. Tritico, Lake Charles, La., Rose, Nash, Williamson, Carroll, Clay & Giroir, W. Dane Clay, Little Rock, Ark., for Tydes William Alley, Jr., et al.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before COLEMAN, GARZA and SAM D. JOHNSON, Circuit Judges.
 GARZA, Circuit Judge:
 
 
 1
 This is an appeal filed by the United States under the False Claims Act, 31 U.S.C. §§ 231-235. The United States filed four complaints against a number of defendants. The defendants include the owners and employees of real estate companies, construction companies and a mortgage company as well as the companies themselves. Bossier Bank and Trust Company is also a defendant in this case, but recovery is sought only for payment based upon mistake of fact rather than the False Claims Act. The present appeal is a consolidation of these four cases. The defendants below filed motions to dismiss for failure to state a claim upon which relief can be granted. The district court granted the motions as to all defendants.
 
 
 2
 As to the developers, the basic factual situations are similar. The developers are alleged to have either conspired to submit or submitted to the Federal Housing Authority Applications for Mortgagor Approval and Commitments for Mortgage Insurance. Each application filed on behalf of the purchasers of homes contained materially false statements as to the credit worthiness and net worth of such home buyers, the amount of down payment which each home buyer would make and their past and present debts. The complaints state that the developers knew these facts to be false. On the basis of these applications, the FHA insured the mortgages in the name of the home purchasers.
 
 
 3
 Thereafter, each of the insured mortgages went into default. Claims were made by the insurance mortgagees against the government, which were paid by the latter. The United States then filed its complaints under the False Claims Act against the developers as well as a claim for recovery of money against the bank due to mistake of fact. Against the developers, the United States sought double the damages which it expended in acquiring, maintaining and preserving the properties less the actual resale amount. The United States also sought forfeiture penalties against the developers. Both such claims for relief are permissible under 31 U.S.C. § 231.
 
 
 4
 As mentioned earlier, the United States also sought recovery against Bossier Bank and Trust Company for the recovery of money which the former had paid to Bossier under mistake of fact. The United States sought only that amount which it had paid to Bossier. No action under the False Claims Act was brought against Bossier Bank.
 
 31 U.S.C. § 231 provides as follows:
 
 5
 Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States, who shall do or commit any of the acts prohibited by any of the provisions of section fifty-four hundred and thirty-eight, Title "CRIMES," shall forfeit and pay to the United States the sum of two thousand dollars, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit.[1]
 
 
 6
 The district court, in its orders dismissing the complaints, relied entirely upon two cases to support its decision: United States v. Hibbs, 568 F.2d 347 (3d Cir. 1977) and United States v. Aerodex, Inc., 469 F.2d 1003 (5th Cir. 1972). In Hibbs, applications were submitted to the FHA which possessed misrepresentations as to the conditions of certain residential property. The FHA insured the mortgages and subsequently paid the mortgagee when default occurred. The district court in that case awarded both the statutory forfeiture penalty and double damages to the United States. The only issue presented on appeal involved that of damages, not the forfeiture penalty. The Third Circuit held that under the Act, the United States must show an element of causation between the false statements and the loss. United States v. Hibbs, 568 F.2d at 341. In other words, the United States must demonstrate that the events which caused the defaults were related to the false statements in the applications. Id. The Third Circuit's reasoning was based upon the phrase in § 231 that anyone violating the Act shall pay to the United States "double the amount of damages which the United States may have sustained by reason of the doing or committing such act." (emphasis added). The Third Circuit held that the default which occurred in that case had not been related to the false statements regarding the conditions of certain residential property.
 
 
 7
 In Aerodex, the Fifth Circuit held, inter alia, that the language of the False Claims Act does not include a claim by the United States for consequential damages which were caused by the delivery of defective goods rather than the submission of a false voucher. United States v. Aerodex, Inc., 469 F.2d at 1011.
 
 
 8
 This court finds no error in the decisions in Hibbs and Aerodex. The language of the statute clearly requires that before the United States may recover double damages, it must demonstrate the element of causation between the false statements and the loss. In the context of a federal housing case, the United States must show that the false statements in the application were the cause of subsequent defaults.
 
 
 9
 On this appeal, we are not dealing with a well developed record. The litigation in the district court had proceeded no further than the filing of Motions to Dismiss the Complaints pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Miller v. Stanmore, 636 F.2d 986, 992 (5th Cir. 1981). Taking the complaint as true, which we are required to do, id. at 988, it is clear that it does present a set of facts which could entitle the United States to relief. False statements regarding residential property may not reasonably be a cause for subsequent defaults of mortgagors, as was the case in Hibbs.[2] Nonetheless, false statements regarding the ability of purchasers to afford housing could very well be the major factor for subsequent defaults.[3] This being the case, the district court erred in dismissing the complaint against the developers since the government has clearly alleged the necessary causation factor.[4]
 
 
 10
 One of the developers, Lannon E. Miller, contends that he should be dismissed regardless of this court's holding on the causation factor. He contends that the complaint does not accuse him of making false statements nor that any damages are sought against him. For these reasons, he contends that he should be dismissed for failure to state a claim against him. This point is completely without merit.
 
 
 11
 Lannon Miller is listed as a defendant in the complaint. Lannon Miller is also listed as the president and principal owner of Miller Builders & Developers, Inc. (MBD). MBD is specifically accused of filing false statements. Lannon Miller is specifically accused of conspiring to defraud the United States based upon the false claims, and damages are sought against all the defendants, including Lannon Miller, jointly and severally. We do not hold today that Lannon Miller is liable in this action. We only hold that the complaint is sufficient to retain him as well as all the developers in this litigation at the present time.
 
 
 12
 This court does find, however, that the district court was correct in dismissing the complaint against Bossier Bank and Trust Company. 12 U.S.C. § 1709(e)[5] renders the validity of any contract of insurance executed by the Secretary of Housing and Urban Development incontestable in the hands of an approved financial institution. The only exception to this provision is if fraud or misrepresentation exists "on the part of such approved financial institution." In other words, the government is barred from recovering against the bank in this case unless the government demonstrates that Bossier Bank sought payment of the insurance by fraud or misrepresentation.[6] The complaint in this case does not allege or even allude to any fraud or misrepresentation on the part of the bank. Since it does not, § 1709(e) would preclude any recovery. The order dismissing the complaint against Bossier Bank and Trust was correct.
 
 
 13
 AFFIRMED IN PART; REVERSED IN PART.
 
 
 
 [1]
 The False Claims Act was previously found in Revenue Statutes §§ 3490-3494, 5438. The civil liability portion of the Act was codified in 31 U.S.C. § 231. Revenue Statute § 5438, which is mentioned in § 231, makes it a crime to make or cause to be made a knowingly false or fraudulent claim against the United States Government, or to submit a knowingly false or fraudulent certificate with the purpose of obtaining payment or approval of such claim. § 5438 also makes it a crime to conspire to defraud the United States by obtaining payment or allowance of any false or fraudulent claim
 
 
 [2]
 In the Hibbs case, the appeal was based upon a full trial before the court. The Third Circuit stated that the causes of the default, unexpected diminution of property caused by a lead paint injunction and the mortgagors' changed financial circumstances, were not related to false certificates regarding the condition of certain residential properties. Hibbs, 568 F.2d at 351. The Third Circuit stated that the same loss would have been suffered by the government had the certificates been truthful. Id. In the instant case, the developers-defendants may very well prevail, but that will have to be shown in the record. On the face of the complaint, a cause of action is stated
 
 
 [3]
 The court in Hibbs did not preclude the United States from ever recovering against developers who filed false statements. In an earlier Third Circuit case, United States v. Veneziale, 268 F.2d 504 (3d Cir. 1959), the court had allowed the government to recover in a false claims action against one who had filed a false statement for a bank loan guaranteed by the FHA. In that case, the court noted that the filing of the false claim was "an important, even an essential factor in subjecting the government to an enforceable demand for money." Id. at 505. The court in Hibbs recognized this fact when it stated that in Veneziale, "the false representations ... arguably had some relevance to the credit worthiness of the borrower as well as the value of security, and thus causal connection with the default which later occurred." Hibbs, 568 F.2d at 352
 
 
 [4]
 Even if the district court had been correct on the causation issue, which we hold it was not, the complaint still states a claim against the developers for the recovery of the statutory forfeiture penalty. 31 U.S.C. § 231 provides that one who violates the Act "shall forfeit and pay to the United States the sum of two thousand dollars...." This portion of the statute is separate from the following phrase which deals with the actual amount of damages sustained "by reason of the doing or committing such act." The element of causation which applies to this latter portion of the statute is not a part of the first portion dealing with forfeiture. As to the forfeiture, the knowing submission of a false claim to the government is sufficient for the levying of the statutory forfeiture penalty. Although the issue is not raised on appeal in Hibbs, the Third Circuit implied that the element of causation necessary to prove damages is not required in assessing the statutory forfeiture penalty. Hibbs, 568 F.2d at 352 (dicta)
 
 
 [5]
 12 U.S.C. § 1709(e) provides as follows:
 Any contract of insurance heretofore or hereafter executed by the Secretary under this title shall be conclusive evidence of the eligibility of the loan or mortgage for insurance, and the validity of any contract of insurance so executed shall be incontestable in the hands of an approved financial institution or approved mortgagee from the date of the execution of such contract, except for fraud or misrepresentation on the part of such approved financial institution or approved mortgagee.
 
 
 [6]
 The government refers this court to a case from the First Circuit in which the United States was allowed to recover money it had paid to a bank arising out of a guaranteed loan. Mt. Vernon Cooperative Bank v. Gleason, 367 F.2d 289 (1st Cir. 1966). That case is wholly distinguishable from the present one. That case involved a payment made to a bank under a Veterans Administration guaranty of a veteran's home loan. The applicable statute involving the government's right to recover was 38 U.S.C. § 1821. § 1821 states that evidence of guaranty or insurance issued by the Administrator of Veterans' Affairs is conclusive evidence of the eligibility of the loan. That statute specifically gives the administrator the right to establish "as against the original lender, defenses based on fraud or material misrepresentation." The source of such fraud or misrepresentation in § 1821 is not delineated, which would allow the United States to recover against the bank for any fraud or misrepresentation perpetrated by anyone involved in the transaction. The statute involved in the present case is clearly different in that the government may recover from a bank only if there is fraud or misrepresentation "on the part of such approved financial institution.... No such fraud or misrepresentation is alleged in the complaint, and the alleged fraud of the developers may not be imputed to the bank